DAVID L. WALTON, SR.,           )
                                )
            Plaintiff           )
                                )
        v.                      )   CIVIL NO. 2:09 cv 161
                                )
UNITED STATES STEEL CORP.,      )
                                )
            Defendant           )

## OPINION AND ORDER

This matter is before the court on the Motion for Summary
Judgment [DE 37] filed by the defendant, United States Steel
Corporation, on March 31, 2012; the Motion for Oral Argument [DE
49] filed by the plaintiff, David Walton, Sr., on June 19, 2012;
and the Motion to Strike Portions of David L. Walton, Sr.'s
Affidavit [DE 50] filed by U.S. Steel on July 2, 2012.  For the
following reasons, the Motion for Summary Judgment [DE 37] is
**GRANTED;** the Motion for Oral Argument is **DENIED;** and the Motion
to Strike Portions of David L. Walton, Sr.'s Affidavit [DE 50] is
**DENIED AS MOOT.**

## Background

The plaintiff, David L. Walton, Sr., an African American,
began working for U.S. Steel at its steel manufacturing facility
in Gary, Indiana, on March 6, 2000.  Walton was a member of the
United Steelworkers of America (USW), which represented U.S.
Steel's production and maintenance employees.  USW negotiated a

Basic Labor Agreement with U.S. Steel that governed the terms and conditions of its members' employment. The BLA governed the right of U.S. Steel to manage and direct work forces, the grievance and arbitration procedures, the discipline and discharge procedures, the hours of work and seniority system, employee transfer rights, and included a prohibition against discrimination. U.S. Steel also had separate policies that prohibited discrimination and harassment. All employees, including Walton, received a copy of the policies upon being hired. The policies also were posted in Walton's department, and he received training on them.

Walton was hired in as a Utility Person, which is a Labor Grade 1, and within six months was promoted to Crane Operator at a Labor Grade 2. In November 2006, Walton applied for a Vicing Foreman position, a union employee who handles various administrative functions. The Vicing Foreman was required to work under the supervision of the Process Coordinator, Wade Piar, and was to handle other matters when Piar was unavailable. Piar selected an African American female over Walton because he believed she was best qualified to handle the duties of the position. Walton never filed a charge with the Equal Employment Opportunity Commission concerning the Vicing Foreman position.

The following January, Walton's car was vandalized in the parking lot at work. Someone placed grease on his car door, but Walton did not complain to management. A few days later, Walton complained at a safety meeting about the language his co-workers used over the radio, including profanity and inappropriate comments about men and women. During that same meeting, a white co-worker, Scott Whitlock, questioned why Walton never was scheduled to work Sundays. Piar informed Whitlock that Walton did not work on Sundays so he could attend church services. Walton was a Pastor at Victory Overcomers Outreach Ministry in Gary, Indiana and volunteered as a Chaplain for the Lake County Sheriff's Department. Two days later, someone put black spray paint and grease on the lockers of both Walton and his son, David Walton, Jr., who also was employed by U.S. Steel. Walton reported the incident to USW Griever Jack Taylor. He believed Whitlock vandalized his locker because of the complaints Walton made at the safety meeting. Whitlock also said over the radio, "I wish I was off Sundays like other special people." (Dep of David Walton, Sr., p. 84)

In January 2007, Walton asked to be off March 30-31, 2007, to attend a pastoral seminar in Dallas, Texas. Walton reminded Piar in February or March that he needed the days off and was told that he either could use vacation time or find another

employee to cover his shifts. Walton was unable to find volunteers to cover his shift. One week before the seminar, Walton instructed the employee preparing the schedule, Vivian Strickland, to place him on the schedule as taking vacation on March 30 and 31. Strickland scheduled two workers to cover the requested days. Before the schedule was printed, Piar changed it and scheduled Walton to work from 7:00 a.m. to 7:00 p.m. both days.

Piar stated that he scheduled Walton for both days because two other crane operators, Mark Sutherland and Tony Piunti, also had requested those days off. Piunti had been hired in 1996 and had seniority over Walton. Under the BLA, Piunti's vacation requests had priority over Walton's. Sutherland was hired around the same time as Walton and did not have seniority, however, he had requested the entire week off. It was U.S. Steel's policy to give priority to week long vacations over single day requests. If Piar had left the schedule unchanged, two employees would have been forced to work a double shift during a week in which many already were working overtime.

Walton did not report to work on March 30-31, 2007, and attended the pastor conference. As a result, employees were forced to work overtime to cover his shift. The BLA stated that an employee may be disciplined for failing to adhere to the schedule. Similarly, U.S. Steel's General Safety and Plant

Conduct Rules and Regulations stated that "Absence from duty without notice to, and permission from, supervisor or other designated person, except in case of sickness or cause beyond the employee's control of a nature that prevents his/her giving notice is cause for suspension preliminary to discharge."  The BLA provided that vacations must be scheduled no later than January 1 of the year in which the vacation is to be taken. Although U.S. Steel tried to accommodate vacation times that were most desired by the employees, U.S. Steel had the final right under the BLA to allot vacation periods.

At his deposition, Walton admitted that Piar had allowed him to take days off over the past seven years to attend pastoral conferences and that Piar granted his request for vacation days the following April and June to attend similar conferences. Walton also admitted that Piar would have permitted him to take off March 30 and 31, 2007, if he had been able to find a replacement.

Walton received two 5-Day suspensions for missing his shifts on March 30 and 31, and two 5-Day suspensions for failing to report off.  U.S. Steel held two hearings, one on April 12 and one on April 19, 2007, giving Walton an opportunity to present his position.  U.S. Steel affirmed the suspension because Piar had given Walton the opportunity to find someone to cover his

shifts.  On May 2, 2007, the USW filed four grievances on Walton's behalf challenging the discipline.  Under the BLA, employees received Justice and Dignity, which allowed them to continue working until a final decision was made on the merits of a grievance.  U.S. Steel initially denied the grievances, but later withdrew the grievances at arbitration because the discipline expired.  Walton did not serve the suspension or lose pay during the grievance review process.

At his deposition, Walton complained that two other employees, Brent Butler and Scott Whitlock, missed work and were not disciplined.  However, Walton could not identify any specific day Whitlock missed work without approval and avoided discipline. Walton identified two shifts in April 2007 that Butler missed and was not disciplined for failing to report off. However, Butler's absentee report does not show any absences in April 2007.  U.S. Steel was able to point to five white employees who Piar disciplined for unexcused absences in 2007.

On April 13, 2007, Walton was scheduled to operate the #406 crane, and Benny Guarjardo, a crane operator with 30 years of seniority, was scheduled to operate the #422 crane.  The #406 crane was less demanding because the operator generally would do only four hours of work and have downtime for the remainder of the 12 hour shift, whereas the operator of the #422 crane would

have to work eight to 12 hours of a 12 hour shift.  Guarjardo
attempted to use his seniority to bump Walton to the #422 crane.
Walton viewed Guarjardo's action as racially motivated and
thought it was connected to a dispute Guarjardo recently had with
Walton Jr.  Walton called Piar at home to question the crane
assignments, and when he did not hear back from Piar, he went to
the infirmary because he had become stressed and wanted to avoid
conflict with Guarjardo.

Walton was awarded a position as a Utility Technician on
April 20, 2007.  The BLA authorized U.S. Steel managers to retain
employees on their former job for a period of time after the
employee was awarded a job vacancy.  Piar retained Walton as a
crane operator until February 2008 because of a shortage of crane
operators in his department.  U.S. Steel and the local USW had a
Memorandum of Understanding that set forth the method to calcu-
late payments owed to individuals whose transfers were delayed
due to business reasons.  Pursuant to the agreement, Walton was
paid $18,822.13 in settlement for the delay in transfer.  Walton
has acknowledged that Piar had retained white employees in their
former positions after being awarded new assignments.

On May 18, 2007, Walton found a garbage can on his locker
and reported the incident to his griever and U.S. Steel Security.
An investigator for Gary Works Security, Anthony Kunkel, con-

ducted an investigation and interviewed Whitlock about the garbage can and locker incident as well as incidents involving Vivian Strickland. During the investigation, Whitlock admitted to placing the garbage can on Walton's locker and was issued a one-day suspension. Walton went to the medical department after reporting the garbage can incident and went on medical leave for nine weeks.

After Walton returned from sick leave in May 2007, he requested to have Sundays off. Prior to taking sick leave, Piar had allowed Walton to have Sundays off. However, after he returned, Piar denied his request. Piar explained to Walton that he could not accommodate his request because there was a shortage of crane operators. Walton was permitted to take off seven Sundays in 2007. Walton never complained about this in the charges he filed with the EEOC.

Walton filed a charge with the EEOC on May 24, 2007, alleging race discrimination and retaliation with regard to the discipline U.S. Steel issued in April 2007 and the vandalism to his locker. Walton amended his charge on June 20, 2007, to add a claim of religious discrimination. On December 30, 2008, Walton filed a second charge of race discrimination and retaliation that referenced a white supremacist poster and a racially derogatory comment that his co-workers directed against his union griever,

Robert Popplewel.  On February 9, 2009, the EEOC issued a Notice of Rights letter to Walton on the first charge, and on July 24, 2009, the EEOC issued a Notice of Rights on Walton's second charge.  Walton's son also filed a charge of discrimination with the EEOC and was issued a Notice of Rights.

Walton filed a complaint with this court on May 8, 2009, alleging discrimination based on race and religion and retaliation.  U.S. Steel moved for summary judgment on all counts on March 30, 2012.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Kidwell v. Eisenhauer,* 679 F.3d 957, 964 (7th Cir. 2012); *Stephens v. Erickson,* 569 F.3d 779, 786 (7th Cir. 2009).  The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party.  *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Stephens*, 569 F.3d at 786.  A fact is material if it is outcome determinative under

9

applicable law.  There must be evidence on which the jury could reasonably find for the nonmoving party.  ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); ***Stephens***, 569 F.3d at 786; ***Wheeler v. Lawson***, 539 F.3d 629, 634 (7th Cir. 2008).  However, summary judgment may be entered against the non-moving party if it is unable to "establish the existence of an essential element to [the party's case, and on which [that party] will bear the burden of proof at trial . . .".  ***Kidwell***, 679 F.3d at 964 (*citing* ***Benuzzi v. Bd. of Educ.***, 647 F.3d 652, 662 (7th Cir. 2011) (*quoting* ***Celotex Corp.***, 477 U.S. at 322, 106 S.Ct. at 2548).

Summary judgment is inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles.  ***Ashman v. Barrows,*** 438 F.3d 781, 784 (7th Cir. 2006).  Upon review, the court does not evaluate the weight of the evidence, judge the credibility of witnesses, or determine the ultimate truth of the matter; rather, the court will determine whether there exists a genuine issue of triable fact.  ***Wheeler***, 539 F.3d at 634 (*citing* ***Anderson***, 477 U.S. at 248, 106 S.Ct. at 2510).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party

opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

> *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511

*See also* *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-122 (2000) (setting out the standard for a directed verdict); *Celotex Corp*., 477 U.S. at 322-23, 106 S.Ct. at 2553; *Stephens,* 569 F.3d at 786; *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); *Springer v. Durfling-er,* 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

Title VII of the Civil Rights Act prohibits discrimination in employment because of an individual's race.  42 U.S.C. §2000e-

2(a)(1).  Section 1981 provides:

> All persons within the jurisdiction of the
> United States shall have the same right in
> every State . . . to make and enforce con-
> tracts . . . as is enjoyed by white citizens
> [and this right includes] the making, perfor-
> mance, modification, and termination of con-
> tracts, and the enjoyment of all benefits,
> privileges, terms, and conditions of the
> contractual relationship.
>
> 42 U.S.C. §1981(a)-(b), as amended by the
> Civil Rights Act of 1991

Title VII and Section 1981 claims require an equivalent analysis.  *See Williams v. Waste Management of Illinois, Inc.*, 361 F.3d 1021, 1028 (7th Cir. 2004); *Cerutti v. BASF Corporation*, 349 F.3d 1055, 1060 n.4 (7th Cir. 2003); *Walker v. Abbott Laboratories*, 340 F.3d 471, 474 (7th Cir. 2003) (noting that Title VII and Section 1981 cases have similar liability standards but different available remedies).  Motions for summary judgment in employment discrimination cases are treated like any other motion for summary judgment.  *Alexander v. Wisconsin Department of Health and Family Services*, 263 F.3d 673, 681 (7th Cir. 2001); *Wohl v. Spectrum Manufacturing, Inc.*, 94 F.3d 353, 355 n.1 (7th Cir. 1996).

In a Title VII and §1981 case, a plaintiff can prove dis-crimination by direct evidence of discriminatory intent or, where no direct evidence exists, by using the indirect-burden shifting method established in *McDonnell Douglas Corporation v. Green*, 411

U.S. 792, 802-805, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973), and refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1092, 67 L.Ed.2d 207 (1981); *Williams*, 361 F.3d at 1034; *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 272 (7th Cir. 2004).  Under the direct method, the plaintiff "must show either 'an acknowledgment of discriminatory intent by the defendant or circumstantial evidence that provides the basis for an inference of intentional discrimination.'".  *See Dandy*, 388 F.3d at 272 (*quoting Gorence v. Eagle Food Centers*, 242 F.3d 759, 762 (7th Cir. 2001)); *Rhodes v. Illinois Department of Transportation*, 359 F.3d 498, 504 (7th Cir. 2004); *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 938-39 (7th Cir. 2003). Circumstantial evidence, by contrast, must create a "convincing mosaic" that "allows the jury to infer intentional discrimination by the decision maker" and points directly to a discriminatory reason for the employment decision.  *Rhodes*, 359 F.3d at 504 (*quoting Troupe v. May Department Stores Company*, 20 F.3d 734, 737 (7th Cir. 1994)); *Adams*, 324 F.3d at 939.

The most general statement of the *McDonnell Douglas* method of proof is that the plaintiff has the initial burden of showing: 1) he belongs to a protected group; 2) he was performing to the employer's legitimate expectations; 3) he suffered an adverse employment decision; and 4) the employer treated similarly situ-

ated employees who are not in the protected group more favorably. *Davis v. Con-Way Transportation Central Express, Inc.*, 368 F.3d 776, 788 (7th Cir. 2004); *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir. 2002). This framework is flexible and may be adapted to fit each case. *Burdine*, 450 U.S. at 253 n.6, 101 S.Ct. at 1094 n.6; *Wohl*, 93 F.3d at 359.

Once the plaintiff has met this initial burden, the burden shifts to the employer who must "articulate a legitimate, nondiscriminatory reason for its actions." *Herron v. DaimlerChrysler Corporation*, 388 F.3d 293, 299 (7th Cir. 2004); *Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 897 (7th Cir. 2003). The employer's burden is not one of persuasion, but rather of production, and "can involve no credibility assessment." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993). *See also Reeves*, 530 U.S. at 142, 120 S.Ct. at 2106.

The burden then shifts back onto the plaintiff to show by a preponderance of the evidence that the reason given by the employer is just a pretext for discrimination. *See Jordan v. City of Gary*, 396 F.3d 825, 834 (7th Cir. 2005); *Volvosek v. Wisconsin Department of Agriculture, Trade and Consumer Protection*, 344 F.3d 680, 692 (7th Cir. 2003); *Peters v. Renaissance Hotel Operating Company*, 307 F.3d 535, 545 (7th Cir. 2002). The plaintiff

14

cannot establish pretext merely by showing that the "reason was doubtful or mistaken." *Crim v. Board of Education of Cairo School District No. 1*, 147 F.3d 535, 541 (7th Cir. 1998). *See also Rummery v. Illinois Bell Telephone Company*, 250 F.3d 553, 557 (7th Cir. 2001). Rather, the plaintiff must show that the employer is lying or that the employer's reasoning has no basis in fact. *Lesch v. Crown Cork & Seal Company*, 282 F.3d 467, 473 (7th Cir. 2002). *See also Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 574-576 (7th Cir. 2003). The trier of fact still may consider the evidence establishing a plaintiff's prima facie case and inferences properly drawn therefrom on the issue of whether an employer's explanation is pretextual. *Reeves*, 530 U.S. at 143, 120 S.Ct. at 2106.

Despite the shifting burden of production, the ultimate burden of persuasion remains at all times with the plaintiff. *St. Mary's Honor Center*, 509 U.S. at 507, 113 S.Ct. at 2747; *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Johnson*, 325 F.3d at 897. A plaintiff alleging discrimination, however, has a lesser burden when proceeding on a summary judgment motion. In *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120 (7th Cir. 1994), the Seventh Circuit stated:

> Both *McDonnell Douglas* and [*St. Mary's Honor Center v. Hicks*, 509 U.S. at 507, 113 S.Ct. at 2747] speak to the burden the plaintiff bears at trial. However, for summary judg-

15

> ment purposes, the nonmoving party, in this
> case the plaintiff, has a lesser burden. He
> must only "produce evidence from which a
> rational fact-finder could infer that the
> company lied" about its proffered reasons for
> dismissal.
>
> 13 F.3d at 1124 (*quoting* **Shager v. Upjohn**,
> 913 F.2d 398, 401 (7th Cir. 1994))

*See also* **O'Neal v. City of New Albany**, 293 F.3d 998, 1005 (7th Cir. 2002); **Alexander v. Wisconsin Department of Health and Family Services**, 263 F.3d 673, 683 (7th Cir. 2001) (stating that evidence that calls into question the truthfulness of the employer precludes summary judgment). If the plaintiff is unable to meet his burden, his claims must fail.

Walton has not submitted direct proof of discrimination and has chosen to proceed under the indirect method of proof. It is undisputed that Walton is a member of a protected class, an African American. However, U.S. Steel contests whether Walton can satisfy the remaining elements of the analysis.

U.S. Steel first moves for summary judgment on Walton's claim that he was discriminated against when he was not awarded a Vicing Foreman position in November 2006. Walton did not identify whether he believed this action was based on racial or religious discrimination. In any case, Walton did not raise this incident in either charge that he filed with the EEOC. 42 U.S.C. §20003—5(e)(1) provides that a charge of discrimination arising

from discrete acts must be filed within 300 days of the act in states that have a state agency authorized to mandate relief when a violation is found, or within 180 days otherwise. Indiana is a deferral state, rendering the charge of discrimination due within 300 days of the occurrence of the act. ***Doe v. R.R. Donnelley & Sons Co.***, 42 F.3d 439, 445 (7th Cir. 1994). An unlawful practice is said to have occurred on the date of the discrete act that caused the loss that led to the party filing a charge with the EEOC. ***National R.R. Passenger Corp. v. Morgan***, 536 U.S. 101, 110-11, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

Acts that create a hostile workplace are different than discrete acts because their nature involves repeated conduct and they occur as part of a series, which can span over an amount of days, months, or years. "[A] single act of harassment may not be actionable on its own." ***National R.R. Passenger Corp.***, 536 U.S. at 115, 122 S.Ct. at 2073. The time for filing only requires that a plaintiff file his charge within a certain number of days after an unlawful practice has occurred. "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." ***National R.R. Passenger Corp***., 536 U.S. at 117, 122 S.Ct at 2074. *See also* ***Vance v. Ball State University***, 646 F.3d 461, 468 (7th Cir. 2011)

(noting that "[w]hen a plaintiff initiates a hostile work environment lawsuit, as opposed to a suit claiming discrimination based on discrete acts, she usually complains of an employer's continuing violation of Title VII 'based on the cumulative effect of individual acts.'").

It is not clear whether Walton intended to state a claim for discrimination based on discrete acts, a hostile environment, or both, nor is it clear whether Walton intended to raise this complaint under Title VII or §1981. The court first will address his complaints as discrete acts under Title VII and §1981 before turning to his allegation that U.S. Steel subjected him to a hostile environment. To the extent Walton alleges that U.S. Steel discriminated against him under Title VII by not awarding him the Vicing Foreman position, his claim is untimely. Walton did not file a charge with the EEOC identifying this incident, and it is well past 300 days after the incident occurred. Therefore, Walton's claim is time barred under Title VII. However, §1981 allows for claims based on racially discriminatory acts to be filed within four years of the discrete act.

To survive a motion for summary judgment under §1981, Walton must show that there is sufficient evidence to support a prima facie case for race discrimination. Among the things that Walton must establish is that U.S. Steel favored an employee outside the

protected class who was not better qualified.  The individual who
was awarded the Vicing Foreman position over Walton also was
African American.  The position, therefore, was awarded to some-
one within Walton's protected class.  Walton has not pointed to
any evidence that a similarly situated employee outside his
protected class was favored or that he was equally or more quali-
fied than the individual who received the position.  Walton only
makes unsupported allegations that he was discriminated against
because he did not receive the position, with absolutely no
support that the decision was because of or had any relation to
his race.  The evidence unequivocally shows that Walton cannot
establish a prima facie case on this claim because there is no
evidence that he was treated less favorably than someone outside
his protected class.  Additionally, Walton did not address this
claim in his response brief.  By failing to respond, Walton
waived his right to object and has failed to show that there is a
genuine issue of material fact regarding whether he was discrimi-
nated against based on race when he was not awarded the Vicing
Foreman position under either Title VII or §1981.  *Hernandez v.
Cook County Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011)
(explaining that skeletal arguments are treated as waived).

Walton also alleges that he was discriminated against be-
cause of his race and religion for taking days off to attend a

religious conference.  A plaintiff alleging religious discrimination under Title VII faces a similar burden as one alleging discrimination based on race.  To succeed, the plaintiff must prove three things: (1) his bona fide religious practices conflict with an employment requirement; (2) he brought the practice or observance to the employer's attention; and (3) an adverse employment action based on the religious practice occurred. *Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 475 (7th Cir. 2001); *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997).  If the plaintiff establishes a prima facie case, the burden shifts to the employer, requiring that it present evidence establishing either that it provided an appropriate accommodation to the employee, which the employee refused, or that the employer would suffer an undue burden resulting from the proposed accommodation.  *Wilburn v. Y.M.C.A. of Greater Indianapolis (Ransburg Branch),* 2007 WL 2752391, *6 (S.D. Ind. Sept. 18, 2007) (citations omitted).  If the employer can show that it offered a reasonable accommodation, it has met its burden and summary judgment may be entered in its favor. *Wilson v. U.S. West Communications*, 58 F.3d 1337, 1340 (8th Cir. 1995).

To show both race and religious discrimination, Walton needed to submit evidence to show that an adverse employment action was taken against him.  Walton never served his suspension

after attending the pastoral conference.  He was allowed to continue working during the grievance process, and the disciplinary action later was dismissed.  Because Walton both attended the conference and avoided discipline, he cannot show an adverse employment action to establish a prima facie case.

In his response brief, the only adverse employment actions Walton identified were that he was denied time off and that U.S. Steel failed to investigate the grievances Walton and his son filed.  Walton claims that he "never had a problem taking Sundays off until his son received a promotion."  (Pltf. Br. p. 4)  It is not clear why Walton believes his son's promotion was the catalyst for racial discrimination, nor does he draw any connection between his son's promotion and any actions that were taken against him because of race.  Rather, it appears that Walton is arguing that the acts occurred because of his son's promotion instead of because of his status as a member of a protected class.  Walton does not clearly frame his intent to pursue this as a claim for retaliation.  Despite the vague argument, the court will address whether Walton suffered adverse employment actions based on race or religion when U.S. Steel scheduled him to work Sundays and failed to investigate his grievances, or whether U.S. Steel retaliated against him for his son's activities.

It appears that Walton considers the act of denying him the vacation days to attend the pastoral conference as an adverse action despite the fact that he took the vacation days and was not disciplined.  The BLA stated that vacations had to be submitted by the first of the year and gave priority based on seniority.  Walton did not submit his vacation request until one week before the conference.  Two other crane operators had scheduled vacations, one of whom had seniority over Walton.  Walton was told he could have the days off if he found volunteers to cover his shift, however, he was unsuccessful at finding volunteers. Walton did not comply with the BLA and was not directly denied time off.  Rather, it was his failure to find someone to cover his shift and his late request for vacation time that caused him to be denied vacation time.  It is difficult to find that this was an adverse employment action by U.S. Steel.

Additionally, Walton has not demonstrated that the two crane operators who were given vacation time on the days he requested were similarly situated, nor has he pointed to any other similarly situated employee outside the protected class who was treated more favorably.  One of the other crane operators had greater seniority and the other requested a week long vacation rather than a single day.  Walton has not pointed to another employee who was granted a single day request upon one week's

notice over someone with more seniority or someone who earlier
requested a week long vacation.  This is fatal to Walton's claim.

Even if Walton could show that the two crane operators were
outside the protected class and were treated more favorably
because Piar gave them vacation time, Walton has not made any
attempt to show that U.S. Steel's explanation was a pretext.
U.S. Steel pointed to the BLA to explain that one of the crane
operators had seniority and that this operator's request was to
be treated more favorably.  U.S. Steel also explained that
typically it gave priority to week long vacations over single day
requests.  Although the other crane operator who was scheduled
for vacation at the same time as Walton had less seniority, he
requested a week off.  Walton has not demonstrated that U.S.
Steel did not consistently abide by these policies and that this
explanation was a pretext.

Walton also complained that he no longer was given Sundays
off after he returned from medical leave.  Again, Walton has not
demonstrated that this was an adverse action.  Under the BLA,
awarding days off was at the discretion of U.S. Steel.  Because
of a shortage of crane operators in Walton's department, it was
difficult to give him time off.  Walton explains that he previ-
ously was awarded time off, and that he believes Piar arbitrarily
decided to schedule him on Sundays.  However, Walton has not

provided any evidence beyond his unsupported allegation to show that the denial was arbitrary.

Even if U.S. Steel was not permitted to deny vacation requests or Piar did so in an arbitrary manner, Walton also has failed to point to one similarly situated employee who was treated more favorably. The record is devoid of any evidence that another employee routinely was given a specific day of the week off. Additionally, U.S. Steel has offered a valid reason which Walton has not disputed. U.S. Steel stated that Walton no longer was given Sundays off regularly because there was a shortage of crane operators in his department. This is supported by the evidence that Walton was retained in the crane operator position for a period of time before being transferred to a new position and that U.S. Steel paid Walton for the delay. Walton does not dispute that there was a shortage of crane operators or that it was necessary to schedule him on Sundays for operations to continue. Therefore, Walton has failed to establish a prima facie case or show that U.S. Steel's stated reason is a pretext for its racially discriminatory intent.

To the extent Walton intended to frame this as a claim for religious discrimination, Walton has not shown that the action was taken because of his religious practices. Walton informed U.S. Steel that he needed Sundays off to attend church services,

however, U.S. Steel was unable to accommodate his request every week because of the shortage of crane operators.  U.S. Steel's stated reason was unrelated to Walton's religion, and he has not presented any evidence to suggest the decision was made based on his religious practice.

Walton also argues that he suffered an adverse employment action because his complaints were not investigated.  However, beyond his bare allegation, he has not provided any substantive support.  Rather, the record shows that after Walton reported vandalism to his locker, U.S. Steel Labor Relations Staff Advisor Joseph Travis spoke with employees and conducted an investigation.  U.S. Steel suspended Whitlock for placing the trash can on Walton's locker.  Walton does not allege that the conduct continued after U.S. Steel issued Whitlock a one-day suspension, nor does he explain how the investigation was insufficient.

Walton's brief also suggests that these acts did not occur until after his son received a promotion.  The court interprets Walton's statement as an argument in support of a claim for retaliation.  Title VII's separate anti-retaliation provision "seeks to prevent harm to individuals based on what they do, i.e., their conduct." ***Burlington N. & Santa Fe Ry. Co. v. White***, 548 U.S. 53, 63, 126 S.Ct. 2405, 2412, 165 L.Ed.2d 345 (2006). Unlawful retaliation in violation of Title VII occurs "when an

employer takes actions that discriminate against an employee because she has opposed a practice that Title VII forbids", or "'testified, assisted, or participated in' a Title VII proceeding or investigation." 42 U.S.C. §2000e-3(a). *See also **Hicks v. Forest Preserve District of Cook County, Illinois**,* 677 F.3d 781, 787 (7th Cir. 2012); ***Kampmier v. Emeritus Corp***, 472 F.3d 930, 939 (7th Cir. 2007)(internal quotations omitted) (*citing **Burlington N.**,* 548 U.S. at 59, 126 S.Ct. at 2410). An employer effectively retaliates against an employee "by taking actions not directly related to [ ] employment or by causing [ ] harm outside the workplace." ***Burlington N.***, 548 U.S. at 63, 126 S.Ct. at 2412. *See also **Thompson v. North American Stanless, LP**,* ___ U.S. ___, 131 S.Ct. 863, 868, 178 L.Ed.2d 694 (2011).

To prove retaliation under the indirect method, "a plaintiff must show that after filing the complaint of discrimination only [he], and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though [he] was performing [his] job in a satisfactory manner." ***Kampmier***, 472 F.3d at 940 (*citing **Stone v. City of Indianapolis***, 281 F.3d 640, 644 (7th Cir. 2002)). The retaliation need not be a result of the plaintiff's own Title VII charge. He also can prove retaliation by showing that he assisted a co-worker in his Title VII action. 42 U.S.C. §2000e-3(a). *See also **Moss v. Lear,***

2007 WL 2901139, *8 (N.D. Ind. Sept. 28, 2007).  Employers are prohibited from retaliating against their employees for partici-pating in any manner in an investigation, proceeding, or hearing under Title VII.  **Moss**, 2007 WL 2901139 at *8.

Walton's only allegation is that he was treated differently after his son was promoted.  He has not demonstrated that his son engaged in a protected activity.  At his deposition, Walton stated that his son filed a grievance against Piar for race discrimination and retaliation on January 29, 2007.  However, Walton Jr.'s grievance actually stated that he was unjustly disciplined because he received a one-day suspension, and it did not include anything about race or retaliation.  The record also shows that his son filed a complaint with this court alleging discrimination.  However, a claim for retaliation requires that the plaintiff somehow supported the employment discrimination claim.  **Moss**, 2007 WL 2901139 at *8.  Walton has not explained how he participated in his son's claim.

Moreover, to sustain his claim, Walton was required to point to similarly situated employees who did not participate in a Title VII action who were treated more favorably.  As explained more thoroughly above, Walton has not pointed to one individual who was similarly situated and treated more favorably with regard to any of the adverse actions he has complained of.  Walton

states in his brief that others witnessed the arbitrary denial of his requested time off, but he has failed to identify even one employee who was treated more favorably in any regard.  This is fatal to his claims.

U.S. Steel also addressed Walton's claim that it discriminated against him by retaining him as a crane operator for ten months after he was awarded a utility technician position.  However, Walton did not mention this contention in his response and therefore has waived this argument.  *Hernandez*, 634 F.3d at 913.

Finally, the court turns to Walton's claim that he was subjected to a hostile environment.  In *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986), the Supreme Court held that Title VII's prohibition against discrimination included conduct that had "the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *See also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993); *McKenzie v. Illinois Department of Transportation*, 92 F.3d 473, 478 (7th Cir. 1996).  A hostile work environment is one in which the harassment is so severe or pervasive that it "alter[s] the conditions of the victim's employment and create[s] an abusive working environment." *Oncale v. Sundowner Offshore Services,*

*Incorporated*, 523 U.S. 75, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998) (*quoting Harris,* 510 U.S. at 21, 114 S.Ct. at 370); *Gleason v. Mesirow Financial, Incorporated*, 118 F.3d 1134, 1143 (7th Cir. 1997). Whether a working environment is considered hostile depends on the totality of the circumstances. Factors to consider include

> the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Harris*, 510 U.S. at 23, 114 S.Ct. at 371

To recover, an employee must show that: 1) he was subject to unwelcome harassment; 2) the harassment was based on his race; 3) the harassment was severe and pervasive so as to alter the conditions of the employee's environment and create a hostile or abusive working environment; and 4) there is a basis for employer liability. *See Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). An employer is strictly liable for harassment caused by a supervisor. *Mason v. Southern Illinois University at Carbondale*, 223 F.3d 1036, 1043 (7th Cir. 2000). However, the employer's liability for a coworker's harassment is limited to situations where the employee can show that his employer has been negligent in discovering or remedying the harassment. *Mason*, 223 F.3d at 1043.

Walton alleges that he was subjected to severe or pervasive conduct because his locker was vandalized on February 2, 2007, a 20 gallon trash can was placed on top of his locker on May 18, 2007, and in July 2008, a poster of Hitler SS forces was posted on a company bulletin board.  Not only is it difficult to conclude that these isolated incidents that were remedied by U.S. Steel's investigation were severe and pervasive, but Walton also has failed to show any correlation between these acts and his race.  In fact, Walton testified that he suspected Whitlock of vandalizing his locker because of complaints he made about a co-worker using profanity over the radio, not because of his race.

Moreover, the record is devoid of evidence that any harassment was conducted by a supervisor or that U.S. Steel acted negligently in discovering or remedying the harassment.  To begin, Walton never saw the SS Hitler poster and therefore could not have been affected by its content.  Once Walton reported the vandalism to his locker, U.S. Steel investigated his claims and suspended Whitlock.  The harassment did not continue following Whitlock's suspension.  The record reflects that U.S. Steel took immediate action to remedy the situation, which proved effective. Walton has not pointed to any evidence nor provided any explanation to show that U.S. Steel acted negligently in remedying his situation.  Walton cannot rely on boilerplate allegations at this

stage without factual support.  His failure to explain and sup-port his argument that U.S. Steel was negligent is fatal to his claim.

Walton has not demonstrated that he was discriminated against or subjected to a hostile environment.  Walton generally made boilerplate statements that he was subjected to discrimina-tion and a hostile environment without any evidentiary support. Walton said he could identify people who witnessed Piar arbi-trarily denying him leave, but he has not provided the factual support with his response.  Each party is required to support its arguments with evidence on summary judgment, and the court will not rely on unsupported contentions.  The evidence before the court does not show that Walton was discriminated against in any manner.

---

Based on the foregoing, the Motion for Summary Judgment [DE 37] filed by the defendant, United States Steel Corporation, on March 31, 2012, is **GRANTED.**  Because the court was able to reach a decision in favor of U.S. Steel based on the briefs, the Motion for Oral Argument filed by the plaintiff, David L. Walton, Sr., on June 19, 2012, is **DENIED,** and the Motion to Strike Portions of David L. Walton, Sr.'s Affidavit [DE 50] filed by U.S. Steel on July 2, 2012, is **DENIED AS MOOT.**

ENTERED this 19th day of September, 2012


                              s/ ANDREW P. RODOVICH
                                 United States Magistrate Judge